610 So.2d 48 (1992)
Cindy L. UNDERHILL (Johnson), Appellant,
v.
PUBLIX SUPER MARKETS, INC., and Florida Unemployment Appeals Commission, Appellees.
No. 91-2826.
District Court of Appeal of Florida, Third District.
December 8, 1992.
Rehearing Denied January 12, 1993.
*49 Gaebe, Murphy, Mullen, Antonelli & Gerlin and David Kleinberg, Coral Gables, for appellant.
Joseph W. Carvin, Human Resources Counsel, Publix Super Markets, Inc., Lakeland, Alley and Alley, chartered, and Mark P. Graves, Tampa, for appellees.
Before SCHWARTZ, C.J., and NESBITT and FERGUSON, JJ.
FERGUSON, Judge.
Publix's employment policies, instituted after the appellant was hired, require employees to submit to drug testing upon demand without a showing of probable cause or reasonable suspicion. Ms. Underhill was directed to an off-site "independent" laboratory for the purpose of being tested for drug use. She agreed to do so. She was then asked to execute a document which indicated that the testing was voluntary. Ms. Underhill refused to sign the form saying that she would not "sign something saying I'm doing it voluntarily when it's not voluntary." She was terminated from employment.
An appeals referee upheld lower administrative determinations denying Underhill's claim for unemployment benefits, finding that the termination was for misconduct connected with her employment. Specifically, the appeals referee found, as a matter of fact:
The claimant felt she was being harrassed and told her supervisor after discussing the matter that she would submit to the drug test, but that she would not sign the consent form since she was not submitting to the drug test voluntarily.
From that finding of fact the referee concluded:
The Claimant's refusal to sign the consent form constitutes, in fact, a refusal to take the test.
For reasons which are painfully obvious, we disagree that refusal to sign the form, as written, was the same as a refusal to take the test. Whatever concerns the employer may have had for legal challenges by employees to its valid drug-testing program was already the subject of voluntarily executed pre-employment or continued-employment agreements. In this case the two acts  agreeing to submit to a drug test as demanded and a refusal of a post-demand request to execute a consent form  are clearly separate and distinct.
Although the parties have presented abundant historical facts of their nine-year employment relationship,[1] our narrow inquiry is whether Underhill's refusal to sign the consent form on May 2, 1991, constituted employment misconduct as defined in section 443.036(26), Florida Statutes (1991), justifying a denial of unemployment benefits. We hold that it did not.
Misconduct in the Unemployment Compensation statute is defined as:
(a) Conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee; or

*50 (b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.
§ 443.036(26), Fla. Stat. (1991). The statute should be liberally construed in favor of the claimant when making a determination whether the employee's conduct constitutes misconduct which would disqualify him from receiving unemployment benefits; its disqualification provisions must be construed narrowly. Hummer v. Unemployment Appeals Comm'n, 573 So.2d 135, 137 (Fla. 5th DCA 1991); Langley v. Unemployment Appeals Comm'n, 444 So.2d 518 (Fla. 1st DCA 1984); § 443.031, Fla. Stat. (1991). A refusal by Underhill to execute a document which states that her submission to a drug test is voluntary, when in fact the testing is compulsory, is not employment misconduct by even a broad reading of the statute.
Reversed and remanded.
SCHWARTZ, C.J., concurs.
NESBITT, Judge, dissenting.
I respectfully dissent. In awarding compensation benefits, the court has not fully adhered to the record before it and further, it confuses semantics with substance.
Claimant was employed by Publix prior to the time in which it initiated a drug and alcohol abuse policy. Nonetheless, in her original employment application she had agreed to abide by company policies, "as adopted by Publix and amended from time to time." Publix' drug and alcohol abuse policy required all employees to be tested for substances that would affect job performance, "at any time, at the company's discretion." Under this policy, the employees were assured that the results of tests would be confidential. Before the appeals referee, claimant acknowledged that when the drug-testing policy was implemented, she attended an employee meeting at which time the new company policy was explained.
According to her store manager, claimant often reported to work "with bags under her eyes," and was reprimanded concerning her "dependability" and for "excessive absences." Following implementation of the drug policy, claimant was requested to submit to a "random test" for drugs. Before being notified as to the test results, she told her manager that she had engaged in conduct which might result in a positive drug test. The test proved positive and she was suspended for ten days and placed in the Publix Employee Assistance Program. Under the suspension, she was permitted to resume work provided she agreed in writing to submit to regular, frequent drug tests. Thereafter, she submitted to several such tests. When requested to take the test in question, she stated that she would comply only if she were permitted to indicate on the consent form that it was "under duress and with threat of my livelihood." It had previously been explained to claimant that unless she consented, her employment would be terminated as Publix could not test its employees for drugs without a signed consent form. As a result of her refusal to sign the consent form in the matter before the court, she was terminated from employment.
In disposing of the claim for compensation, the appeals referee's finding and order concluded:
The claimant's refusal to sign the consent form constitutes in fact a refusal to take the test.
I fully agree with the order of the Unemployment Appeals Commission. There is nothing in Florida law, or particularly section 440.102, Florida Statutes (1991), which makes Publix' drug-testing program unlawful.
The appeals referee's analysis of the situation is plainly correct. It is patently contradictory to claim that one agrees to submit to a test but does not "voluntarily" consent to do so. Claimant's argument which admits that she "agreed" to submit to the test but refused to "consent" to it, is therefore oxymoronic. When claimant was requested to submit to the test in controversy here, she admittedly agreed to provide *51 a sample but refused "to sign any papers indicating it was voluntary." It seems to me that the addition of this language added nothing to the understanding. The majority holds that "the two acts  agreeing to submit to a drug test as demanded and refusal of a post-demand request to execute a consent form  are clearly separate and distinct." I believe the holding is flawed for two reasons. First, claimant had agreed to abide by company policy. Such a holding is implicit in the appeals referee's findings. Secondly, the contemporary usages of the words "agree" and "consent" are defined by the American Heritage Dictionary. For example, the word "consent" is defined as, "[t]o give assent; agree... ." American Heritage Dictionary, 312 (2d ed. 1983). Likewise, the word "agree" is defined as, "[t]o grant consent; accede... ." Id. at 88. The words "agree" and "consent" are synonymous and can be used interchangeably.
Consequently, claimant's refusal to sign "any papers indicating [the test] ... was voluntary," is meaningless. This is especially true since she had signed the standard "Employee Consent for Testing" form when previously asked to submit to a drug test.
Publix' request for "consent" was not unreasonable, and fell within policy which claimant had agreed to follow when she filled out her employment application. As the appeals referee noted, without a signed consent form the testing laboratory would not even conduct the test. We live in a litigious age and while liability here for either the lab or Publix may have been only slight, it was not unreasonable, given the totality of the times or the circumstances, for Publix to have insisted upon claimant signing the consent form.
We are confronted with a war on drugs in which Publix, one of Florida's largest employers, has reasonably responded to the challenge by developing an employee assistance program so as to rehabilitate and keep its employees working. It is no argument to say that because Florida is a terminable at will jurisdiction, Publix is free to discharge its employees whenever it chooses. Such an argument ignores the economic realities of premiums paid for unemployment compensation when an employer is placed in a high risk category requiring higher premiums in order to maintain unemployment compensation benefits.
The court's decision today frustrates a laudable effort by an employer to rehabilitate employees involved with alcohol or drugs. The message the court sends is that it is better for an employer to simply discharge employees with drug or alcohol problems rather than rehabilitate them. Such a policy is neither good for employees nor management, and makes for poor public policy as well. I hope the court will certify the question to the Florida supreme court.
NOTES
[1] The "war on drugs" alarm sounded by the dissent rings hollow in this setting. Observations made by the employer, that the employee had "bags under her eyes" and a problem with "dependability," were made four to five years before this incident. On March 29, 1991, she signed the employer's "Employee Consent for Testing." There is no suggestion that the employee showed signs of drug use or poor work performance in the eight-month period preceding the November 1991 demand that she submit to a random test. She agreed to comply with the March drug test agreement but refused to agree that the execution of another consent form was voluntary. That latter action was not a breach of the earlier testing agreement. As the dissent notes, the claimant's refusal to sign another consent form was "meaningless."