664 So.2d 1160 (1995)
Susan L. ALDERMAN, Appellant,
v.
UNEMPLOYMENT APPEALS COMMISSION, et al., Appellee.
No. 94-2934.
District Court of Appeal of Florida, Fifth District.
December 22, 1995.
Treena A. Kaye, Sanford, for Appellant.
John D. Maher, Tallahassee, for Appellee Unemployment Appeals Commission.
No Appearance for Appellee Blen F. Gibson Auctioneering Services, Inc.
ANTOON, Judge.
Susan Alderman appeals the order of the Unemployment Appeals Commission (UAC) affirming the appeal referee's decision to deny her claim for unemployment compensation benefits. We reverse.
Alderman was a full-time employee of the Federal Deposit Insurance Corporation (FDIC) for four years. During the last year of this employment, she took a part-time job with Gibson Auctioneering Services, Inc. *1161 (Gibson), working six to eight hours per week. In June 1994, Alderman was laid off from her job at FDIC. Because the layoff made it economically unfeasible for her to continue her part-time employment, she quit her part-time job with Gibson. Alderman filed a claim for unemployment compensation benefits, but her claim was denied for the reason that she had voluntarily left Gibson without good cause.
The issue before us is whether, under section 443.101(1)(a), Florida Statutes (Supp. 1994), a worker who voluntarily leaves part-time employment without good cause attributable to the employer totally forfeits the right to receive all unemployment compensation benefits, including those benefits to which the worker was entitled to receive as a result of previous full-time employment. We conclude that the statute does not require such a forfeiture.
In considering this issue, we first recognized that statutes must be interpreted to facilitate the achievement of their goals in accordance with reason and common sense. Department of Commerce v. Hart, 372 So.2d 174 (Fla. 2d DCA 1979). The legislative objective of the Unemployment Compensation Law is to "lighten the burden which now so often falls with crushing force upon the unemployed worker and his family." § 443.021, Fla. Stat. (1993). Furthermore, Unemployment Compensation Law is remedial in nature and thus must be construed liberally to effect the stated objectives of the statute. § 443.031, Fla. Stat. (1993); Baeza v. Pan American/National Airlines, Inc., 392 So.2d 920 (Fla. 3d DCA 1980). Provisions disqualifying workers from receipt of benefits are to be construed narrowly. Underhill v. Publix Super Markets, Inc., 610 So.2d 48 (Fla. 3d DCA 1992), rev. denied, 624 So.2d 267 (Fla. 1993); Baeza, 392 So.2d at 923.
Next, we recognized that similar issues concerning the forfeiture of unemployment compensation benefits have been addressed by other Florida courts. For example, in Neese v. Sizzler Family Steak House, 404 So.2d 371 (Fla. 2d DCA 1981), rev. denied, 412 So.2d 471 (Fla. 1982), the second district considered the question of whether an individual receiving partial unemployment compensation could be totally disqualified from receiving unemployment compensation benefits because she voluntarily left part-time employment. The UAC urged that this question be answered in the affirmative, arguing that an individual who has more than one job should be disqualified from receiving any benefits if she voluntarily leaves one of those jobs. The second district rejected this argument for the following reasons: (1) such an interpretation would militate against Florida's public policy in favor of easing the economic burden on unemployed workers and their families; (2) such an interpretation would result in unwarranted benefits to former employees of part-time workers; and, (3) Unemployment Compensation Law should not be interpreted in such a manner as to discourage part-time employment. For these reasons, the Neese court held that the employee did not forfeit her right to receive unemployment compensation benefits when she left her part-time job without good cause attributable to her employer, explaining that when a worker voluntarily leaves part-time employment, the worker is rendered ineligible for further unemployment compensation benefits only to the extent that such benefits are decreased by virtue of the part-time earnings. Neese, 404 So.2d at 372. Accord Wright v. Unemployment Appeals Commission, 512 So.2d 333 (Fla. 3d DCA 1987).
Also, other Florida cases have, for similar reasons, held that it is error to terminate a worker's award of unemployment benefits because the worker quits a part-time job which the worker obtained after such benefits had been awarded based upon the worker's previous full-time employment. See Tierney v. Florida Unemployment Appeals Commission, 640 So.2d 154 (Fla. 2d DCA 1994); Stewart v. Dollar Tree, 635 So.2d 73 (Fla. 1st DCA 1994); Coelho v. Balasky, 631 So.2d 335 (Fla. 3d DCA 1994); Barry v. Faulk Investments, Inc., 621 So.2d 713 (Fla. 2d DCA 1993).
The UAC suggests that reliance upon case law such as Neese is improper because the legislature's recent amendment to chapter 443 was a direct response to Neese and its progeny. In this regard, the UAC cites to *1162 section 443.101 of the statute which was amended by adding the following definition of the term "work":
An individual shall be disqualified from benefits:
(1)(a) For the week in which he has voluntarily left his work without good cause attributable to his employing unit for misconduct connected with his work, if so found by the division. The term "work" as used in this paragraph, means any work, whether full-time, part-time, or temporary.

§ 443.101(1)(a), Fla. Stat. (Supp. 1994) (emphasis added). The UAC maintains that the amended statute, by express terms, deems full-time, part-time, and temporary work the same, and that, as a result, this amended statute must be construed as meaning that when a worker holds two jobs, one part-time job and one full-time job, and later loses both jobs, the worker's entitlement to receive unemployment compensation benefits depends upon how the last job ended. For example, UAC suggests that if the full-time job were lost as a result of a layoff thus entitling the worker to receive unemployment compensation benefits, such entitlement to receive those benefits would be forfeited if the worker subsequently quit a part-time job without good cause attributable to the employer. We find this argument unpersuasive because we detect no indication that the above cited amendment to section 443.101 was enacted in response to Neese. Had the Legislature intended the harsh result of creating a total bar to part-time workers' receipt of benefits regardless of the circumstances, the amended statute would clearly say so.
Reason and common sense also militate against the interpretation urged by the UAC because, under that interpretation, even if Alderman had been required to leave her part-time job with Gibson in order to seek full-time employment, she would have been totally disqualified from receiving any benefits. In our view, a more reasonable interpretation of the amended statute is that the UAC is required to individually consider unemployment compensation claims based on the termination of employment for each job, whether it be full-time, part-time, or temporary. This interpretation would mean that, to the extent a worker holding multiple jobs left any job voluntarily and without good cause attributable to the employer, there would be a reduction in benefits but not a total forfeiture of benefits. Such an interpretation is consistent with the policy behind the Unemployment Compensation Law, and the plain wording of the amended statute. Also, it is responsive the concerns expressed in Neese, yet avoids the harsh and puzzling results suggested by the UAC.
In summary, the UAC's decision to totally disqualify Alderman from receiving unemployment compensation benefits which she was entitled to receive as a result of her employment with FDIC must be reversed. Applying Neese, Alderman's award of benefits should be based upon her total entitlement reduced by the amount she would have earned had she continued with her part-time work for Gibson.
REVERSED.
DAUKSCH and COBB, JJ., concur.