711 So.2d 260 (1998)
Judith C. CROSBY, Appellant,
v.
UNEMPLOYMENT APPEALS COMMISSION, et al., Appellees.
No. 97-1729.
District Court of Appeal of Florida, Fifth District.
June 5, 1998.
*261 T.A. Delegal, III, of Delegal & Merrett, P.A., Jacksonville, for Appellant.
Kelly T. Blystone of Moran & Shams, P.A., Orlando, for Appellee, The Devereaux Foundation.
No Appearance for Appellee, Unemployment Appeals Commission.
ANTOON, Judge.
Judith Crosby appeals the order of the Unemployment Appeals Commission (UAC) determining that she was not entitled to receive unemployment compensation benefits because she was discharged for misconduct. We reverse because Crosby's actions which resulted in her discharge did not constitute misconduct.
Crosby was employed as principal of the Devereaux school located in Viera, Florida. After she suspended a student from school, she received a telephone call from the student's father, an employee of Alternative Family Care (AFC) and a foster care parent. The student's father told Crosby that if he did not "get an audience with Crosby's boss that evening ... he would go to the facility[,] break windows and show his ass."
After receiving the call, Crosby told Devereaux's contract supervisor and Devereaux's director of quality management about the father's statements. They both advised her to contact the division of the Department of Children and Family Services (DCFS) which oversees AFC. The DCFS representative advised Crosby that she should call the DCFS abuse hotline as well as the father's employer at AFC. Crosby called the hotline; however, upon hearing the contents of the father's telephone call, the hotline representative refused to file a report. Crosby then again consulted with both the DCFS representative and Devereaux's director of quality management and was again advised to call the father's supervisor at AFC. When Crosby called AFC, she told them about the father's statements and opined that, due to his conduct, he should not be licensed as a foster care parent.
The father complained to Devereaux about Crosby's telephone call to AFC. In response to his complaint, Crosby's supervisor directed her to write a letter of apology to the father. Crosby refused to write the letter and, as a result of that refusal, her employment was terminated.
Following her discharge, Crosby applied for unemployment compensation benefits. The claim adjuster initially determined that Crosby was entitled to receive benefits because she was "discharge[d] ... for reason[s] other than misconduct connected with work." See § 443.101, Fla. Stat. (Supp.1996). Devereaux appealed that decision. The appeals referee affirmed the claim adjuster's determination, explaining that Crosby was entitled to receive benefits because Devereaux's demand that Crosby write an apology letter was not reasonable. The referee reasoned that Crosby "should not have to apologize for actions [the director of Devereaux quality management] approved." The referee further explained that Crosby reasonably believed that by writing a letter of apology she *262 might subject herself to criminal prosecution for falsely reporting abuse to DCFS. See § 415.513, Fla. Stat. (Supp.1996).
Devereaux appealed the referee's award of benefits. Upon review, the UAC reversed the appeals referee's recommendation, ruling that Crosby's refusal to write the apology letter constituted misconduct because her "own evidence reflects that the DCFS abuse hotline did not accept a report based on her telephone call ... [and][t]he claimant's refusal to write this letter was a failure to comply with a direct and reasonable order which amounted to insubordination and constituted misconduct connected with work...." (Emphasis in original). Crosby appeals this ruling, contending that the UAC's determination that she was discharged for misconduct is clearly erroneous. We agree.
Employees who are discharged for misconduct connected with their work are not eligible to receive unemployment compensation benefits pursuant to section 443.101, Florida Statutes (Supp.1996). Misconduct is defined as
[c]onduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee; or ... [c]arelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employee's interests or of the employee's duties and obligations to his employer.
§ 443.036(26)(a)-(b), Fla. Stat. (Supp.1996). In determining whether misconduct has occurred, the statute should be liberally construed in favor of the claimant. See Hummer v. Unemployment Appeals Comm'n, 573 So.2d 135, 137 (Fla. 5th DCA 1991). Furthermore, the employer has the burden to demonstrate misconduct. See Paul v. Jabil Circuit Co., 627 So.2d 545, 546 (Fla. 2d DCA 1993).
Crosby explained that she refused to write the apology letter because she did not want to subject herself to more sexual harassment or verbal abuse from the father. She also explained that by contacting AFC concerning the father's telephone call, she had complied with Devereaux's policies, and the letter would have indicated that she had acted on her own in a volatile situation and she felt it would be dishonest and "not a good idea." Finally, Crosby testified that she feared that by writing such a letter she would subject herself to prosecution for filing a false report with the DCFS abuse hotline. In reversing the appeals referee's recommendation, UAC determined that Crosby's refusal to write the apology letter constituted misconduct because she could not be criminally prosecuted for filing a false abuse report since DCFS did not file a report against the father.
We conclude that the appeals referee had properly determined that no misconduct had been demonstrated because it was reasonable for Crosby to refuse the order to write an apology letter when she, in good faith, believed that by doing so she would subject herself to criminal prosecution. It was Crosby's good faith reasonable belief that was controlling because if an employee reasonably refuses to perform a required act, the employee is still eligible to receive unemployment compensation benefits. See Pascarelli v. Unemployment Appeals Comm'n, 664 So.2d 1089, 1093 (Fla. 5th DCA 1995). See also Hubbard v. Best Termite & Pest Control, 627 So.2d 581, 582 (Fla. 2d DCA 1993)("one good faith error in judgment, ... does not disqualify [the employee] from unemployment benefits ...").
Furthermore, Crosby's refusal to write the apology letter was not misconduct as defined in section 443.036(26)(a)-(b), Florida Statutes (Supp.1996), because Devereaux's order directing Crosby to write the letter was unreasonable. In this regard, the order required Crosby to apologize for having made calls to DCFS and AFC but the calls had been approved by the contract supervisor and the Devereaux director of quality management. An employee will not be disqualified from receiving benefits based upon the employee's refusal to comply with an employer's order if the employer's order was unreasonable or illegal. See Pascarelli, 664 So.2d at 1093. See also Chery v. Flagship *263 Airlines, Inc., 692 So.2d 213, 214 (Fla. 3d DCA 1997)(employer's order for employee to give written statement before speaking with his attorney was unreasonable and therefore employee was entitled to recover benefits); Underhill v. Publix Super Markets, Inc., 610 So.2d 48, 49 (Fla. 3d DCA 1992), rev. dismissed, 624 So.2d 267 (Fla.1993)(employee's refusal to state that a compulsory drug test was voluntary "is not employment misconduct by even a broad reading of the statute").
Accordingly, since Crosby's refusal to write a letter of apology did not constitute misconduct connected with her work, she was entitled to receive unemployment compensation benefits. The decision of the UAC must therefore be reversed.
REVERSED.
DAUKSCH and HARRIS, JJ., concur.