795 So.2d 1075 (2001)
Lynne E. ROCHUSSEN, Appellant,
v.
UNEMPLOYMENT APPEALS COMMISSION and Opinion Research Corporation, Appellees.
No. 2D00-3622.
District Court of Appeal of Florida, Second District.
September 21, 2001.
John P. Cunningham of Gulfcoast Legal Services, Inc., St. Petersburg, for Appellant.
John D. Maher, Unemployment Appeals Commission, Tallahassee, for Appellee Unemployment Appeals Commission.
No appearance for Appellee Opinion Research Corporation.
ALTENBERND, Acting Chief Judge.
Lynn Rochussen appeals the order of the Unemployment Appeals Commission (UAC) affirming the appeals referee's decision to deny her claim for unemployment benefits. Although Ms. Rochussen worked full-time for Bank of America, formerly known as NationsBank, for more than fifteen years and was laid off for no cause attributable to her, she is being denied unemployment benefits by the State of Florida because she had the resourcefulness to work part-time for six weeks while seeking suitable, permanent employment. We are compelled to affirm the UAC's decision because the current statutes leave *1076 us no choice. We are inclined, however, to believe that the legislature was misinformed as to the nature of an amendment it passed in 1999 and that it never intended this harsh result. We tell Ms. Rochussen's story in hopes that the legislature will read it and consider an amendment to protect people like her in the future.
Ms. Rochussen went to work for a bank on January 1, 1984, when she was 27 years old. Ultimately, she became an investment associate at the bank earning more than $25,000 per year. Like many banks, her employer changed names and structures over the years and became known as NationsBank and thereafter Bank of America. She survived the various bank mergers until October 8, 1999. On that day, she was laid off because the bank had eliminated her position in the local office. The bank gave her a severance package that continued some of her salary until April 30, 2000.
Between October and April 2000, Ms. Rochussen conducted a job search without success. She is a single mother with a college-age child. She decided to take a part-time job to earn a little extra money while she was looking for a suitable job. Accordingly, she took a job as a telemarketer for Opinion Research Corporation. She started the job on January 25, 2000, and worked through March 10, 2000, a period of about six weeks. She worked from 4 to 7 p.m., Monday through Friday, making $8.05 per hour. In total, she earned $831.17 at this job. She quit the job because it interfered with her ability to interview for jobs in the afternoon.
Ms. Rochussen applied for unemployment compensation in early May, immediately after her severance package expired. She applied for benefits listing Nations-Bank or Bank of America as her most recent employer, but disclosing the brief period of part-time employment with Opinion Research Corporation. The Division of Unemployment Compensation (the Division) sent Ms. Rochussen a denial of benefits in which it classified Opinion Research as the employer and denied her benefits because she voluntarily quit the part-time job. The denial of benefits informed Ms. Rochussen that she would be eligible for benefits only after she had earned $4,675, which is 560% of her total earnings at the part-time job. This rate was apparently based largely upon her earnings at the bank.
Ms. Rochussen sent the Division a letter appealing its decision and explaining that she believed the Division was analyzing the claim using the wrong employer. She did not contest that she had quit the part-time job, but she did not regard that work as a suitable replacement for the job that she had held for fifteen years at the bank. The appeals referee reviewed the matter and conducted an evidentiary hearing. The referee concluded that, under current law, Opinion Research must be treated as the relevant employer and that Ms. Rochussen had voluntarily left that job.
Ms. Rochussen appealed the referee's decision to the UAC. It affirmed with an opinion. We attach a copy of that opinion as an appendix to this opinion because it fully explains the UAC's position and reflects the long-standing disagreement between the UAC and the courts as to the best way to address this issue while remaining true to the public policies and rules of interpretation contained in sections 443.021 and 443.031, Florida Statutes.
We affirm the UAC's decision in this case, as we affirmed a similar decision in Groudas v. Pinellas County School Board, 793 So.2d 983 (Fla. 2d DCA 2001). We are constrained to do so because of the amendments passed by the legislature in chapter 99-131, Laws of Florida, addressing the part-time job issue. It is important for the legislature to understand, however, *1077 that the part-time job issue involves two distinct situations: (1) people who quit part-time jobs that they held long before they lost their primary job, and (2) people who take on part-time jobs because they are unemployed or about to become unemployed and thereafter discover that the part-time job is incompatible with their primary obligation to search for suitable, full-time employment. The legislative history of chapter 99-131, which was filed as House Bill 1951,[1] strongly suggests that legislators were only aware that they were addressing the first situation. It seems inconceivable that any legislator would actually have intended to forfeit Ms. Rochussen's right to unemployment benefits relating to her job at the bank simply because she attempted to aid her family and maintain her own self-respect by taking a part-time job that just did not work out.
The scenario the legislature clearly intended to address was that which first arose in Neese v. Sizzler Family Steak House, 404 So.2d 371 (Fla. 2d DCA 1981). In Neese, the employee was working two jobs. She was laid off from a full-time job for reasons that authorized her to receive unemployment benefits. A few weeks later, she quit her part-time job, which she apparently held before she was laid off. The UAC held that the employee's benefits should be terminated in total. From a practical perspective, the UAC announced a rule that an individual forfeits benefits attributable to the full-time job by quitting the part-time job. This court reversed the UAC, explaining its reasoning in detail. We held that the benefits should only be decreased by an amount related to the part-time earnings.
The UAC disagreed with the rule announced in Neese. Six years later, in a comparable case, the UAC was chastised by Judge Pearson in the Third District for its failure to obey the rule in Neese. See Wright v. Fla. Unemployment Appeals Comm'n, 512 So.2d 333 (Fla. 3d DCA 1987). In fairness to the UAC, the problem with the Neese opinion is that it mandated a remedy not specified in the statutes. The statutory methods for calculating benefits allowed an offset for other partial employment but made no provision for an offset for other partial employment that the individual voluntarily quit. See § 443.111(3)(b), Fla. Stat. (1981).
Although it would seem that the UAC could have easily arranged for a legislator to propose a statutory amendment to ease implementation of the rule announced in Neese, that did not occur. Instead, in 1994, someone submitted a bill attempting to overrule Neese. See H.B. 2447, 13th Leg., Reg. Sess. (Fla.1994). Prior to the amendment, section 443.101(1)(a), Florida Statutes (1993), stated:
Disqualification for benefits.An individual shall be disqualified for benefits:
(1)(a) For the week in which he has voluntarily left his work without good cause attributable to his employing unit or in which he has been discharged by his employing unit for misconduct connected with his work, if so found by the division.
The amendment added a final sentence: "The term `work' as used in this paragraph, means any work, whether full-time, part-time, or temporary." Ch. 94-347, § 4, at 2481, Laws of Fla.
Both before and after this amendment, section 443.101(1)(a)(1) stated: "Disqualification for voluntarily quitting shall continue for the full period of unemployment next ensuing after he has left his work *1078 voluntarily without good cause...." As a result of this language, courts continued to follow Neese after the amendment because the partial benefit rule could still fit within the language of the statute, and the logic and fairness of the reasoning in Neese convinced the courts that the legislature did not intend a rule requiring forfeiture of the benefits arising from full-time employment. See Alderman v. Unemployment Appeals Comm'n, 664 So.2d 1160 (Fla. 5th DCA 1995).
After the Alderman decision, House Bill 1951 was submitted during the 1999 session. While this bill primarily reduced unemployment taxes, it also included a section to overrule Neese. In relevant part, it added the following language to section 443.101(1)(a)(1): "Disqualification for voluntarily quitting shall continue for the full period of unemployment next ensuing after he or she has left his or her full-time, part-time, or temporary work voluntarily without good cause...." The Committee on Finance and Taxation's substantive analysis prepared for House Bill 1951 relating to this amendment states, in part:
In 1981, Florida's Second District Court of Appeal held in Neese v. Sizzler Family Steak House, 404 So.2d 371 (Fla. 2d DCA 1981), that an individual is not totally disqualified for benefits when he/she works a full-time and part time job simultaneously, qualifies for partial unemployment benefits based on being laid off by the full-time employer, then subsequently quits the part-time job. The court ruled that, in such instances, the individual is entitled to partial benefits which is equal to the weekly benefit amount reduced by what the individual would have earned had he/she continued the part-time employment. The district courts have continued to follow the Neese decision, despite legislative amendment in 1994 aimed at overturning Neese.

It further states:
Disqualification
The bill would overturn Neese and its progeny (Berger v. Asolo Center for the Performing Arts, Inc., 686 So.2d 649 (Fla. 2d DCA 1996)); Alderman v. Unemployment Appeals Commission, 664 So.2d 1160 (Fla. 5th DCA 1995); Tierney v. Florida Unemployment Appeals Commission, 640 So.2d 154 (Fla. 2d DCA 1994); Stewart v. Dollar Tree, 635 So.2d 73 (Fla. 1st DCA 1994); Coelho v. Balasky, 631 So.2d 335 (Fla. 3d DCA 1994). This bill would require the total disqualification of individuals who work a full-time and part-time job simultaneously and qualify for partial benefits based on being separated from the full-time employer, if they subsequently quit the part-time job.
Staff Analysis of Finance & Taxation Comm. for H.B.1951, 16th Leg., Reg. Sess., Report on Unemployment Comp. (Fla.1999) (emphasis added), available at htt p://www.leg.state.fl.us/data/ session/1999/House/bills/analysis/pdf/HB1951.FT.pdf.
As can be seen in this analysis, the legislature was informed that the amendment addressed cases in which individuals worked "a full-time and part-time job simultaneously." Although this summary cited cases similar to Ms. Rochussen's case, no one informed the legislators that they were voting to forfeit benefits for unemployed people who unsuccessfully attempt part-time employment while looking for suitable full-time employment.[2]
*1079 Thus, Ms. Rochussen fits within a different category of people than Ms. Neese. Ms. Rochussen is being penalized because she did not want to be a burden on society and because she tried a part-time job that was not compatible with her primary obligation to find suitable, full-time employment. She fits into a cluster of cases including: Barry v. Faulk Invs., Inc., 621 So.2d 713 (Fla. 2d DCA 1993); Stewart v. Dollar Tree, 635 So.2d 73 (Fla. 1st DCA 1994); Coelho v. Balasky, 631 So.2d 335 (Fla. 3d DCA 1994); Tierney v. Fla. Unemployment Appeals Comm'n, 640 So.2d 154 (Fla. 2d DCA 1994); Berger v. Asolo Ctr., 686 So.2d 649 (Fla. 2d DCA 1996); Bomar v. Rolling in Dough Cookie Co., 715 So.2d 333 (Fla. 2d DCA 1998); Milkolsky v. Unemployment Appeals Comm'n, 721 So.2d 738 (Fla. 5th DCA 1998); Rembert v. Interim Personnel, Inc., 745 So.2d 993 (Fla. 2d DCA 1999); Groudas, 793 So.2d 983 (Fla. 2d DCA 2001).
As this court succinctly stated in Tierney:
To deny benefits to an individual in appellant's position would not further the legislative purpose of the Unemployment Compensation Lawto ease the financial hardships caused by unemployment but could discourage part time employment and give a windfall in the form of reduced contribution rates to the former full time employer.
Tierney, 640 So.2d at 155.
Assuming the legislature intends to overrule Neese[3] but does not wish to deprive people like Ms. Rochussen of their unemployment benefits, we believe that chapter 443 could be amended to achieve that result. Although someone with greater expertise in unemployment law might propose a more sophisticated solution, we would suggest that the last sentence in the first part of section 443.101(1)(a) could state: "The term `work' as used in this paragraph means any work, whether full-time, part-time, or temporary, but shall not include part-time work accepted by the individual after unemployed from full-time work or in anticipation of such unemployment."
Unless and until the legislature amends the statute, people who are unemployed from full-time jobs should be warned that they should never accept a part-time job while searching for a full-time job unless they are completely certain that they will never quit the part-time job before finding suitable employment. Thus, with our regrets to Ms. Rochussen, we affirm the decision of the UAC.
Affirmed.
SALCINES and SILBERMAN, JJ., Concur.

*1080 APPENDIX

STATE OF FLORIDA

UNEMPLOYMENT APPEALS COMMISSION
In the matter of:
Claimant/Appellant
LYNNE E ROCHUSSEN
SS No. XXX-XX-XXXX
 U.A.C. Order No. 00-03708
VS.
 Referee Decision No. 00-17913U
Employer/Appellee
OPINION RESEARCH CORP
Employer No.-None
UCCO-3643-0
ORDER OF UNEMPLOYMENT APPEALS COMMISSION NO. 00-03708
This cause comes before the Commission for disposition of the claimant's appeal pursuant to Section 443.151(4)(c), Florida Statutes, of a referee's decision holding the claimant disqualified from receipt of benefits.
The issue before the Commission is whether the claimant voluntarily left work without good cause within the meaning of Section 443.101(l), Florida Statutes.
The claimant established her claim effective April 30, 2000. Her base period employers were Nations Bank NA and Bank of America NT & SA. She was not held disqualified as a result of her separations from these employers. Prior to filing her claim, she accepted employment as a part-time telephone surveyor with the instant employer, Opinion Research Corp. The claimant resigned from that employment effective March 10, 2000. The referee held the claimant disqualified because she voluntarily left work without good cause attributable to the employing unit. The referee's decision is in accord with the law and will not be disturbed.
On appeal, the claimant argues that she should not have been disqualified because she left a part-time job. In support of her argument, the claimant cites a number of court opinions. These opinions are not controlling; therefore, the claimant's argument is rejected.
In Neese v. Sizzler Family Steak House, 404 So.2d 371 (Fla. 2d DCA 1981), rev. den. 412 So.2d 471 (Fla.1982), the claimant had both full-time and part-time employment. She was separated from her full-time employer under non-disqualifying circumstances and was awarded partial unemployment benefits. She then voluntarily left her part-time job. Although the applicable statutes were clear and unambiguous, the Court, based upon its interpretation of legislative intent, held that, a claimant who voluntarily left a part-time job under these circumstances should not entirely forfeit her right to benefits. The Court held that the appropriate penalty would be to reduce the claimant's benefits to the extent of her loss of part-time income. This "partial reduction" penalty was subsequently adopted by other district courts. See Wright v. Florida Unemployment Appeals Commission, 512 So.2d 333 (Fla. 3d DCA 1987), Campeanu v. Florida Unemployment Appeals Commission, 629 So.2d 1015 (Fla. 4th DCA 1993), and Stewart v. Dollar Tree, 635 So.2d 73 (Fla. 1st DCA 1994).
Prior to June 1994, Section 443.101(l)(a), Florida Statutes, provided that an individual "shall be disqualified for benefits for the week in which he has voluntarily left his work without good cause attributable to his employing unit" and that a disqualification for voluntarily quitting "shall continue for the full period of unemployment next ensuing after he has left his work voluntarily without good cause and until such individual has earned income equal to or in excess of 17 times his *1081 weekly benefit amount." On its face, the statute did not distinguish between full-time, part-time or temporary employment and did not provide for a "partial reduction" penalty. The disqualification imposed a severe penalty upon individuals who became unemployed voluntarily, but the Legislature provided an incentive for part-time workers to continue working. Section 443.111(4)(b), Florida Statutes, provides that "each eligible individual who is partially unemployed in any week shall be paid with respect to such week a benefit in an amount equal to her or his weekly benefit less that part of the earned income (if any) payable to her or him with respect to such week which is in excess of 8 times the federal hourly minimum wage...." For example, a claimant whose weekly benefit amount is $250, established as a result of a layoff from a full-time job, who is employed part-time and earning $100 a week would be entitled to partial unemployment benefits in the amount of $191. The incentive for continuing work, therefore, is $41. The law also provides that employers who continue to provide part-time work to workers who are entitled to partial benefits will not be charged with any benefit payments made to such partially unemployed claimants. Clearly, the Legislature intended to encourage work, whether full-time, part-time, or temporary, and discourage voluntary unemployment.
The above-cited court opinions required the Commission to fashion and impose a penalty not found in the statute; therefore, the Florida Legislature was requested to clarify its intent with respect to disqualification of claimants who quit part-time jobs. The Legislature responded by amending Section 443.101(l)(a), Florida Statutes, to explicitly define the term "work" to mean "any work, whether full-time, part-time, or temporary." The amendment became law effective June 3, 1994. The Agency, thereafter, continued to apply a complete disqualification penalty when a claimant voluntarily left work without good cause attributable to the employing unit regardless of whether the separation was from full-time, part-time or temporary employment.
In Alderman v. Unemployment Appeals Commission, 664 So.2d 1160 (Fla. 5th DCA 1995), the claimant had both full-time and part-time employment. Like the claimant in Neese, she was separated from her full-time employer under non-disqualifying circumstances. She then quit her part-time job. The Commission upheld the denial of benefits because the claimant voluntarily left her part-time employment without good cause attributable to the employing unit. On appeal, the Court rejected the Commission's argument that the amendment to Section 443.101(l)(a), Florida Statutes, was intended by the Legislature to result in a total disqualification of a worker who left part-time employment under these circumstances. The Court held that the amendment was to be interpreted to hold that the Commission was required to "individually consider unemployment compensation claims based on the termination of employment for each job, whether it be full-time, part-time or temporary." The Court then held that, "to the extent a worker holding multiple jobs left any job voluntarily and without good cause attributable to the employer, there would be a reduction in benefits but not a total forfeiture of benefits," and applied the "partial reduction" penalty originally expounded in Neese. The Court ignored the statutory penalty enacted by the Legislature that provides for disqualification to continue from the week in which the individual quits and until the individual earns 17 times the weekly benefit amount. In effect, the Court fashioned a penalty to fit its view of public policy without regard to the express *1082 intent of the Legislature. Although the Court asserted that the Legislature had not expressly rejected Neese and the cases that followed it, the Legislative staff analysis clearly reflects otherwise. The Court, however, did not have the benefit of the staff report when it rendered its opinion.
In direct response to the Alderman decision, the 1999 Florida Legislature again amended the penalty provisions of Section 443.101(l)(a)l., Florida Statutes, to make it abundantly clear that a disqualification for voluntarily quitting "shall continue for the full period of unemployment next ensuing after he or she has left his or her full-time, part-time, or temporary work voluntarily without good cause and until such individual has earned income equal to or in excess of 17 times his or her weekly benefit amount" and that "no other disqualification may be imposed." (emphasis added). The amendment became law effective July 1, 1999.
The Legislature has now explicitly provided that the total disqualification penalty applies when a claimant has, left part-time or temporary work without good cause attributable to the employing unit. The "partial reduction" penalty crafted by the courts in Neese and its progeny has been rejected. As stated by the Court in Alderman, the Commission is required to consider the claimant's termination of employment from each job, whether it be full-time, part-time or temporary. The Commission, however, must impose the disqualification penalty enacted by the Legislature. Neither the Commission nor the Courts may fashion novel penalties upon a view of fairness that conflicts with the explicit language of the statute. The claimant in the instant case voluntarily left part-time employment without good cause attributable to the employing unit and she is subject to the total disqualification penalty imposed by the Legislature. The claimant is disqualified from the week ending March 11, 2000, and until she earns $4,675.
Upon review pursuant to Section 443.151(4)(c), Florida Statutes, it is found that the decision of the appeals referee is in accord with the essential requirements of law and is, therefore, affirmed.
It is so ordered.
UNEMPLOYMENT APPEALS COMMISSION
R. Carson Dyal, Chairman
Charlie Harris, Member
James A. Hammond, Member, Not Participating
This is to certify that on
 Aug 10 2000
 the above Order was filed in the
 office of the Clerk of the
 Unemployment Appeals Commission,
 and a copy mailed to the last
 known address of each interested
 party.
 By: S. SIMMONS
 Deputy Clerk
NOTES
[1] It was also filed as House Bill 109, which has comparable legislative history. See Groudas v. Pinellas County School Bd., 793 So.2d 983 (Fla. 2d DCA 2001).
[2] Because section 443.101(1)(a), Florida Statutes (2000), is a "disqualification" statute, it makes no difference in this case whether Ms. Rochussen's job at the bank ended on October 8, 1999, or April 30, 2000. Although the legislature thought it was addressing only the issue of an individual who subsequently quits a part-time job, the amended statute also disqualifies an individual who quits a part-time job and is subsequently laid off by the full-time employer before earning seventeen times the weekly benefit amount. Surely, the legislature did not intend to give full-time employers such a window of opportunity to avoid unemployment compensation consequences when discharging long-term employees.
[3] This court candidly admits that it still finds considerable merit in the reasoning and policies discussed in Neese and believes that it would be beneficial if the legislature at least considered and debated an amendment to implement that decision. To accomplish that goal or to modify the proposal contained in the body of this opinion, section 443.111(1)(4)(a) could be amended to state:

(4) WEEKLY BENEFIT FOR UNEMPLOYMENT.
(a) Total Each eligible individual who is totally unemployed in any week shall be paid with respect to such week a benefit in an amount equal to her or his weekly benefit amount, except that an individual who is totally unemployed, in part, due to voluntarily quitting part-time or temporary work shall receive a benefit that is the weekly benefit amount less the income that would have been earned from the job that was voluntarily quit.