SALTER, J.
(dissenting).
I respectfully dissent. The Reemployment Assistance Appeals Commission’s order approved procedural and legal errors by the Agency for Workforce Innovation, since renamed the Department for Economic Opportunity, in this unemployment benefits case, with the result that the order should be reversed and the case remanded for further proceedings before the Department.
I. Facts and Procedural Background
The employee, claimant, and appellant here, Mr. Guillen, began working for Republic Services of Florida as a recycling truck driver in October 2008. As his supervisor explained at the telephonic hearing in this case: “Traditionally, the company has staffed its recycling trucks with two people, a driver and a helper, and corporate — you know, for cost-saving reasons, corporate decided they wanted us to change the routes and remove the helper from the route.” A supervisor testified that this change was described to Republic’s drivers in July 2011, about two weeks before the new policy was implemented, but it is unclear whether that change was translated into Spanish for Mr. Guillen’s benefit.[3] At his regular report time, between 5:00 and 5:10 a.m., on the first day the new policy began, July 23, 2011, Mr. Guillen was asked to drive without a helper and to make additional stops on a longer route. Mr. Guillen’s testimony on the effect of this policy was not contradicted by the employer. Mr. Guillen established that these changes required him: (a) as a solo driver with no helper, to stop his truck and attend to refuse containers on the right hand side of the truck that would ordinarily have been accomplished by the helper; (b) to work an additional two hours per day without the possibility of overtime pay; and (c) to drive a longer route.
When told about the new “consolidated route” to be driven without a helper, Mr. *214 Guillen objected. His supervisor brought in another employee to translate, and the new requirements and Mr. Guillen’s objections were discussed. What happened next is sharply disputed. Mr. Guillen testified that he was told that if he didn’t like the new requirements, he should leave, “to go home and not to return.” Republic’s witnesses testified that Mr. Guillen refused to work his assigned route under the newly-imposed conditions, left the workplace, missed the next two business days of work, and was thereupon terminated for “job abandonment or resignation.”
Mr. Guillen filed his claim for unemployment compensation benefits at the Department’s office. On July 27, 2011, an initial “wage transcript and determination,” Department Form UCB-11, was issued, establishing an eligibility for benefits of $275 per week and commencing with an effective date of July 24, 2011. This notice was sent to the claimant and to Republic. Three weeks later, with an effective date of August 19, 2011, the Department issued a “notice of determination” confirming that Mr. Guillen was entitled to be paid his benefits. Section I of the notice stated:
BASED ON AVAILABLE INFORMATION IT IS DETERMINED THAT THE CLAIMANT WAS DISCHARGED FOR REASONS OTHER THAN MISCONDUCT CONNECTED WITH THE WORK. THE EMPLOYER OR THE EMPLOYER’S REPRESENTATIVE FAILED TO RESPOND TO THE AGENCYS REQUEST FOR SEPARATION INFORMATION.
Five days later, on August 24, 2011, a “senior unemployment insurance consultant” from “Talx UC eXpress” (with a return address in St. Louis, Missouri) sent a fax to the Department as a “duly authorized agent empowered to act on behalf of’ Republic.[4] The cover letter states:
We respectfully request a redetermination on the following information.
We request non-charge and offer this information in regards to the UCB 412. The claimant was discharged for insubordination. Please see attached responses provided on 8-17-11.
Two nearly-identical letters, each dated August 17, 2011,[5] also from Talx, were attached. The first states “[t]he claimant was discharged for insubordination” and lists no other reasons or details. The second states “[t]he claimant was discharged for insubordination. On 7-28-2011, the claimant refused to work assignment, walked off the job, and never returned.”
Neither the Talx letter of August 24, 2011, nor either of the nearly-identical Talx letters of August 17, 2011, showed copies were sent to Mr. Guillen. Apparently the Department treated the Talx letter of August 24, 2011, as an appeal from the determination in favor of Mr. Guillen, rather than a request for a redetermination, because in mid-September the De *215 partment notified Mr. Guillen and Talx that a telephonic hearing was scheduled for the morning of September 27, 2011.[6] There were two issues, according to the notice. The first was “whether the claimant was discharged for misconduct connected with work or voluntarily left work without good cause in the statute,” and the second was whether benefits paid would be charged to Republic’s employment record (an issue outside the scope of Mr. Guillen’s appeal here).
Four days before the telephonic hearing, a Talx representative in Phoenix, Arizona, faxed directly to the hearing officer, Mr. Herrero, twelve pages of historical information regarding Mr. Guillen’s employment and hours. Some of the pages in the record are partly or completely illegible. During the hearing, Mr. Guillen testified that he did not receive his copies of those documents until the day before the 8:45 а.m. hearing.
During the hearing, Republic’s operations manager (who did not actually witness the disagreement between Mr. Guil-len and his immediate boss on July 23, 2011), Mr. Guillen’s boss, and another employee who spoke Spanish, testified that Mr. Guillen refused to accept the new requirements for his route, left the workplace, and did not return. Mr. Guillen testified that he was told that if he didn’t like the new requirements, he should go home and not return.
The appeals referee issued a decision in favor of Republic a few days later, finding that Republic’s new policy was implemented July 23, 2011, that Mr. Guillen refused to drive his assigned route, that he invited his supervisor to fire him and left the jobsite, and that he was terminated for “job abandonment” on July 28, 2011. The referee’s conclusions of law determined essentially that Mr. Guillen “voluntarily quit his job” and did not prove that “a reasonable person would have given up gainful employment to become unemployed.” On that basis, the referee found that the claimant voluntarily quit his job without good cause. Mr. Guillen sought review by the Commission, which affirmed in a standard form order. This appeal ensued, and here Mr. Guillen is for the first time represented by an attorney.
II. Procedural Issue: Only a Redeter-mination Was Sought by Talx
The procedures for unemployment compensation claims, determinations, redeter-minations, and appeals are detailed in separate subsections of a single statutory section, section 443.151, Florida Statutes (2011). When a claim is filed, the employer is promptly provided a notice of the claim so that the employer can object to any errors in the wage transcript or eligibility determination. Section 443.151(3)(a) provides, in pertinent part, “[t]he employer must respond to the notice of claim within 20 days after the mailing date of the notice, or in lieu of mailing, within 20 days after the delivery of the notice.” In the case at hand, the Department stated in the August 19, 2011, notice of determination that Republic failed to respond to the Department’s request for separation information.
“Redetermination” refers to a specific section of the statute applicable when the Department or a party requests the reconsideration of a previously-issued determination to consider an error, new evidence, or new information after a prior determination. Redeterminations are governed *216 by section.443.151(3)(e), while appeals are governed by section 443.151(4). Importantly, the Talx letter of August 24, 2011, transmitted in response to the Department’s August 19 determination in Mr. Guillen’s favor, requested a “redetermination,” not an appeal.[7] This distinction has important procedural ramifications. The “new” evidence or information submitted for a redetermination may not be considered if it was actually available to a party at the time of the original determination. Ponce v. Fla. Unemployment Appeals Comm’n, 47 So.3d 929, 931 (Fla. 3d DCA 2010); Reeves v. Fla. Unemployment Appeals Comm’n, 782 So.2d 525, 526 (Fla. 1st DCA 2001).
Republic and Talx did not submit timely information to the Department alleging misconduct or job abandonment by Mr. Guillen, with the result that the initial determination granted his claim for benefits. Because Talx requested a “redeter-mination” five days after that notice of determination, that is the procedure the Department should have followed. No telephonic hearing is required in connection with a redetermination, and none was requested by Talx. A Department adjudicator, rather than an appeals referee, would have considered the new evidence or information and would have considered whether an error occurred or new, persuasive evidence warranted a redetermination denying Mr. Guillen his benefits. After the adjudicator ruled on the redetermination, either party could have filed an appeal. It was error for the Department to ignore the employer’s specific request for a redetermination and instead to proceed directly to an appeal; for this reason Mr. Guillen’s appeal is well taken.[8]
III. Legal Issue If Talx Appealed: “Good Cause”
Even if one were to conclude that the Department followed the correct procedure by treating the Talx request for a redetermination as an appeal, Mr. Guillen is also correct that the appeals referee did not apply the proper legal test to his case. The Talx letter of August 24, 2011, characterized Mr. Guillen’s separation from employment with Republic as a “discharge for insubordination.” The appeals referee’s notice of hearing instead recast the issue as whether “the claimant was discharged for misconduct connected with work or voluntarily left work without good cause as defined in the statute.” While “insubordination” is a form of misconduct and a separate basis for disqualification for unemployment benefits, the burden is on the employer to prove significantly more than a single or isolated act of bad judgment. Crosby v. Unemployment Appeals Comm’n, 711 So.2d 260 (Fla. 5th DCA 1998); Webb v. Rice, 693 So.2d 1109, *217 1111-12 (Fla. 3d DCA 1997) (explaining that acts which warrant discharge by an employer may be insufficient to warrant a denial of unemployment benefits for misconduct).
The appeals referee expanded the disqualification issue from misconduct based on insubordination, the issue raised by Talx in its letter, to include voluntary departure without good cause. Section 443.101(l)(a)l, Florida Statutes (2011), provides, in pertinent part, “the term ‘good cause’ includes only that cause attributable to the employing unit which would compel a reasonable employee to cease working.”
The appeals referee failed to consider and determine whether a reasonable employee would accept the material changes in the terms of employment imposed unilaterally by the employer effective the day of separation, July 23, 2011. The testimony by the employer’s witnesses and by Mr. Guillen was in agreement regarding these facts: the assistance previously provided by “helpers” who rode with the drivers on the recycling routes was withdrawn as a cost-saving measure by Republic; for the same cost-saving reason, Mr. Guillen’s routes were lengthened, with no additional allowance for overtime; and these changes became effective the day Mr. Guillen left the jobsite, July 23rd.
Republic plainly had the right to impose such changes in the terms of employment, as Mr. Guillen was an at-will employee, but that is not the issue. The issue is whether the materially- and unilaterally-altered terms of employment gave Mr. Guillen a reasonable reason to leave his position without losing his statutory rights to unemployment compensation based on his work for Republic over the past years. Good cause to quit is established when “the employer substantially and unilaterally altered the terms of the agreement under which [the employee] accepted employment.” Curras v. Fla. Unemployment Appeals Comm’n, 841 So.2d 673, 674 (Fla. 3d DCA 2003); accord Wilson v. Fla. Unemployment Appeals Comm’n, 604 So.2d 1274, 1274 (Fla. 4th DCA 1992). The appeals referee concluded, under his “conclusions of law,” that Mr. Guillen had failed to establish that “the working conditions were such that a reasonable person would have given up gainful employment to become unemployed,” and that Mr. Guillen was not “coerced into any illegal or unethical acts.” But where, as here, the employer unilaterally and materially alters the terms of employment, it is the employer that must carry the burden of establishing that the employee lacked good cause to terminate the employment relationship. See Jameson v. Unemployment Appeals Comm’n, 842 So.2d 267 (Fla. 2d DCA 2003) (reversing an appeals referee’s denial of benefits, finding that when an employer has made “sweeping changes to the terms of [an employee’s] hire,” and no evidence was presented to contradict the employee’s reasons for resignation,[9] the employee is entitled to benefits). The effort by Republic and Talx to shift this burden to Mr. Guillen was mistakenly approved by the referee and also requires reversal. Reversal also is warranted by the lack of reasonable notice of additional documents faxed directly to the appeals referee four days before the morning hearing but only delivered to Mr. Guillen the day before that hearing.
The majority opinion, after excusing every procedural misstep by Talx as Republic’s agent, relies on its own test for “good cause.” At page four of its opinion, the *218 majority ñnds no evidence that “Republic imposed working conditions so harsh or unreasonable on Guillen that he had no choice but to quit.” That is not, and has never been, the correct statutory test for assessing an employee’s refusal to accept unilateral, material, and adverse changes in working conditions.
IV. Conclusion
I would reverse the Commission’s order of November 17, 2011, and remand with instructions to return the case to the Department for a redetermination regarding Mr. Guillen’s claim under section 443.151(3)(e), Florida Statutes (2011), as requested by Republic’s purported agent Tak. In the alternative, if the Tak letter of August 24, 2011, were to be construed as an appeal rather than the expressly-stated request for a redetermination, I would reverse and remand the case for further proceedings before a Department appeals referee (a) allowing Mr. Guillen more than a few hours to consider the twelve pages of additional documents faxed by Tak to the appeals referee four days before the telephonic hearing, but delivered to Mr. Guillen the day before the 8:45 a.m. hearing (i.e., allowing Mr. Guillen a “reasonable opportunity to review” the documents before the hearing, afforded parties by section 443.151(4)(b)5.c.(I)); and (b) requiring specific findings on the actual legal and factual issue in contention between the parties (i.e., whether Republic’s material changes in the terms of Mr. Guil-len’s employment as a solid waste truck driver provided “good cause” for his refusal to drive a “consolidated,” longer, and solo route under section 443.101(l)(a)l).
For all these reasons, I respectfully dissent.

. The Republic witnesses acknowledged that Mr. Guillen does not speak English. He was provided an interpreter for the telephonic hearing.

. The record contains nothing to substantiate the claim that Republic authorized representation by Talx. When Mr. Guillen’s counsel served Talx with its initial brief in this appeal, Miami counsel for Republic advised this Court that "TALX is not Republic Service's registered agent, nor is it counsel for Republic Services." Though section 443.151(7), Florida Statutes (2011), exempts "authorized representatives” from the "qualified representative” standard imposed by section 120.62(2) and normally applicable to administrative proceedings, it seems obvious that an employer should document the authorization, not the out-of-state non-party agent.

. The Talx letters were not sent to the Department adjudicator within the twenty-day period specified by section 443.151 (3)(a), resulting in the adjudicator’s initial allowance of Mr. Guillen’s claim for benefits. The record also does not include any later confirmation by the Department that it received the Talx letters supposedly faxed on August 17, 2011.

. A similar notice was issued for an earlier date, but Talx requested and obtained a postponement.

. The Talx letter seeking a redetermination submitted attachments and “offered additional information” as set forth in those attachments, but did not mention or request a hearing. The Department’s Office of Appeals and the majority here have simply excused or ignored Republic's untimely response to the initial claim and have recharacterized the Talx request for a redetermination as an appeal.

. Mr. Guillen did not raise this procedural error by the Agency denying his telephonic hearing, but neither did he waive it. At that point, Mr. Guillen had no assistance from an attorney. Because Republic failed to provide evidence in opposition to Mr. Guillen’s original claim, it is appropriate to classify the Talx request for a redetermination as precisely that, rather than as an appeal. It is repugnant to the express procedure laid out in section 443.151 to allow an employer to ignore the Agency’s written request to the employer for any evidence of ineligibility (“[t]he employer must respond to the notice of claim within 20 days”) and then to appeal the resulting determination in favor of the claimant. § 443.151(3)(a) (emphasis supplied).

. In this case, the record does not address other evidence of misconduct or insubordination. The discussion between Republic’s representative and Mr. Guillen was confined to the acceptability of the major change in work requirements imposed by Republic to save money.